No. 47,892

HIGHLAND LUMBER COMPANY, INC., *Appellant,* v. VIRGIL D. KNUDSON and KENNETH BOYCE, *Appellees.*

(548 P. 2d 719)

Opinion filed April 10, 1976.

*Robert A. Reeder,* of Troy, argued the cause and was on the brief for the appellant.

*Harry E. Miller,* of Finley, Miller & Cashman, of Hiawatha, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: This action was instituted by plaintiff-appellant, High-land Lumber Company, Inc., to recover on an account for building materials, which were used in the construction of buildings on a farm owned by defendant-appellee, Virgil D. Knudson. The action as to defendant-appellee, Kenneth Boyce, was dismissed before trial in the district court. Plaintiff has appealed from a judgment rendered in favor of defendant.

An appeal from a judgment in a separate action evolving from transactions concerning the same project is decided this day. (See *Boyce v. Knudson,* 219 Kan. 357, 548 P. 2d 712.)

In the instant case plaintiff's petition alleged that defendant Boyce ordered certain materials for the construction of a building on land owned by defendant Knudson; that a principal and agent relation-ship existed between Knudson and Boyce; and that Knudson au-thorized and directed Boyce to procure materials and to construct a hog house, all at the specific direction and instance of Knudson. The petition further alleged that from time to time, after May 3, 1971, the plaintiff at the specific instance and request of defendant Boyce, and with the consent and affirmation of defendant Knudson, made deliveries of lumber and materials which continued through 1971 amounting to a total of $1,903.34, payment of which has been demanded but remains due and owing.

In his answer to plaintiff's petition Knudson admitted that he contracted with Boyce to build a hog house, but specifically denied that he authorized or directed Boyce to procure any materials from plaintiff and also denied that Boyce was his agent or that a prin-cipal and agent relationship existed. Knudson in his answer fur-ther denied that he personally went to plaintiff's place of business and approved the purchase of lumber and materials purchased by Boyce. By way of further defense in his answer, Knudson alleged that plaintiff had filed a mechanic's lien for the amount sued for in the petition and that by filing such mechanic's lien plaintiff had elected its remedy.

The record does not disclose any pretrial conference or discovery proceedings, and the matter came on for trial to the court without a jury on May 2, 1973. From the pleadings and the opening state-ments of counsel, which are reproduced in the record, it is apparent that the controlling question at issue was whether a relationship

of principal and agent existed between defendants Knudson and Boyce.

Plaintiff's evidence consisted of the testimony of Wilbur Stewart, president and general manager of plaintiff, and the testimony of defendant Boyce. Mr. Stewart testified as to the sale and delivery of the materials, but admitted that he never called Knudson when Boyce was buying materials until the account with Boyce was past due at which time Stewart called Knudson and asked why Boyce had not been paid. Stewart also testified that he had requested his attorney to draw up the papers and file a mechanic's lien against the Knudson property in the amount sued for, which was due and owing from Boyce.

Boyce testified that he had a verbal agreement with Knudson; that there were several changes made after the job was started; and that there was more than one job, which we assume means that there was more than one building involved. Boyce further testified that Knudson and his wife retained control and direction of the job, and that on occasion Knudson would stop the work and make a change at a later date.

Knudson testified that he entered into an oral agreement with Boyce to build a hog house for $3,600; that later he decided that he needed something changed and asked Boyce the cost of the change which Boyce said would be $1,000 more or a total of $4,600; Knudson agreed. Knudson testified that he did not buy any materials and that lumber was to be purchased by Boyce. He also testified:

". . . The Highland Lumber truck was there and then may be the next day the Horton truck [Meyer Lumber and Hardware Company, Inc.] would be there and Tri-State[Tri-State Concrete, Inc.]. It made no difference to me, I had the price and type of building I wanted. . . ."

Knudson testified that he had paid Boyce $4,600 and that at a later time, he contracted with Boyce to build a smaller building for $1,150, which sum was not paid to Boyce, but later paid into the clerk of the court. Knudson also testified that after Stewart called him and asked him why he had not paid Boyce, he went to see Stewart and after his conversation with Stewart he withheld the balance due Boyce of $1,150. Knudson testified that he knew that the Highland Lumber Company, Inc., had filed mechanic's liens and that one had been filed by Boyce. He also testified that he did not authorize the purchase of materials or the charging of materials to him.

After hearing the evidence the trial court made findings of fact and conclusions of law. The court found that Knudson and Boyce contracted for the construction of a hog house with cement pits at both ends, for the sum of $4,600, which had been paid by Knudson to Boyce, and that at a later time Knudson and Boyce had entered into a contract for the construction of a smaller hog house for the sum of $1,150, which included labor and materials.

The trial court further found that the plaintiff sold Boyce materials and supplies in the amount of $1,903.34. Findings and conclusions Nos. 5, 6 and 7 encompass the central issue in this appeal and read as follows:

"5. That on August 19, 1971, the plaintiff filed a mechanic's lien in the District Court of Brown County, Kansas against the defendant, Virgil D. Knudson in which plaintiff alleged that the $1,903.34 was due said plaintiff from the defendant, Kenneth Boyce, contractor, for the material and said amount remained unpaid. That plaintiff further alleged in its mechanic's lien that the defendant Kenneth Boyce and the defendant, Virgil D. Knudson, had a contract for the building of said buildings on the Virgil D. Knudson land.

"6. The plans and specifications for the hog house were drawn by the defendant, Virgil D. Knudson and there was an occasion when it was necessary for the defendant to explain these plans to the contractor. The defendant, Virgil D. Knudson did not reserve the right to control the physical manner which the work and labor was performed by the contractor, nor did the defendant reserve the right to control the changes of plans or directing the method and manner of construction of the building.

"7. The defendant, Virgil D. Knudson is not obligated to the plaintiff for the purchase of the materials purchased by the contractor from the plaintiff."

Plaintiff asserts numerous errors on appeal. However, we believe the controlling question, resolution of which will dispose of this appeal, is whether there is evidence to support finding No. 6 which is in the form of a negative finding that defendant did not retain control of the method and manner of the construction of the buildings so as to serve as a basis for the establishment of a principal and agent relationship.

The theory of plaintiff's case at trial was that there was an implied agency between Knudson as principal and Boyce as agent, and its contention on appeal is that the evidence clearly establishes that Knudson did in fact control the work and labor performed by Boyce and did direct the method and manner of the construction in question. Defendant's position is that Boyce was an independent contractor and that the evidence failed to establish an agency relationship.

As preliminary to discussing the contentions of the parties, we note that an agency relationship may be either express or implied, and where the relationship is in issue the party relying thereon to establish his claim has the burden of establishing the existence of the relationship by clear and satisfactory evidence. (*Brown v. Wichita State University*, 217 Kan. 279, 540 P. 2d 66; *Rodgers v. Arapahoe Pipe Line Co.*, 185 Kan. 424, 345 P. 2d 702; and 3 Am. Jur. 2d, Agency, § 17, p. 428.) What constitutes agency and whether there is any competent evidence reasonably tending to prove the relationship is a question of law. (*Brown v. Wichita State University*, supra; *Hendrix v. Phillips Petroleum, Co.*, 203 Kan. 140, 453 P. 2d 486, and *Shugar v. Antrim*, 177 Kan. 70, 276 P. 2d 372.) The law concerning the establishment of an agency relationship is summed up by Chief Justice Fatzer in the recent case of *Brown v. Wichita State University*, supra, in which it is stated:

"To determine whether the record establishes an agency by agreement, it must be examined to ascertain if the party sought to be charged as principal has delegated authority to the alleged agent by words which expressly authorize the agent to do the delegated act. If there is evidence of that character, the authority of the agent is express. If no express authorization is found, then the evidence must be considered to determine whether the alleged agent possesses implied powers. The test utilized by this court to determine if the alleged agent possesses implied powers is whether, from the facts and circumstances of the particular case, it appears there was an implied intention to create an agency, in which event the relation may be held to exist, notwithstanding either a denial by the alleged principal, or whether the parties understood it to be an agency. (citing cases.)" (pp. 286, 287.)

In the case at bar, finding No. 6 indicates that the trial court, from the evidence, was led to the conclusion that Boyce was an independent contractor; in this connection we find this pertinent statement appearing in 41 Am. Jur. 2d, Independent Contractors, § 7, pp. 749-750:

". . . [T]he theory adopted in many cases to differentiate between an agent and an independent contractor is that one is to be regarded as an agent or an independent contractor according to whether he is subject to, or free from, the control of the employer with respect to the details of the work. . . ."

Further in the same treatise in § 10 it is stated:

". . . An employer of an independent contractor may retain a broad general power of supervision and control as to the results of the work so as to insure satisfactory performance of the contract—including the right to inspect, *to stop the work*, to make suggestions or recommendations as to details

of the work, *or to prescribe alterations or deviations in the work*—without changing the relationship from that of owner and independent contractor or the duties arising from that relationship. . . ." (pp. 756-757.) (Emphasis supplied.)

In *Shugar v. Antrim*, supra, we spoke of implied authority of an agent and the requirements of establishing an agency relationship in these words:

". . . It is implied if, from statements of the parties, their conduct and other relevant circumstances, it appears the intent of the parties was to create a relationship permitting the assumption of authority by an agent which, when exercised by him, would normally and naturally lead others to believe in and rely on his acts as those of the principal. While the relation may be implied from a single transaction, it is more readily inferable from a series of transactions. An agency will not be inferred because a third person assumed that it existed, nor because the alleged agent assumed to act as such, nor because the conditions and circumstances were such as to make such an agency seem natural and probable. . . ." (p. 74.)

While the determination of what constitutes agency and whether there is any competent evidence reasonably tending to prove its existence is a question of law, the weight to be given evidence and the resolution of conflicts therein are functions of the trier of facts. There was evidence in this case, particularly the testimony of Knudson and Boyce, which was in conflict. However, under well-established rules of appellate review this court disregards any conflicting evidence or inferences which might be drawn therefrom and accepts as true the evidence, and all inferences to be drawn therefrom, which support or tend to support the findings of the trial court. (*Farmers State Bank of Ingalls v. Conrardy*, 215 Kan. 334, 524 P. 2d 690; and *Morris v. Hoesch*, 204 Kan. 735, 466 P. 2d 272.)

In the instant case finding No. 6 is a negative finding of the trial court to the effect that Knudson did not reserve the right to control the manner in which the actual work was performed by Boyce. Concerning the effect of a negative finding, we held in the recent case of *Jones v. Estate of Cooper*, 216 Kan. 764, 533 P. 2d 1273:

"The effect of a negative finding is that the party upon whom the burden of proof is cast did not sustain the requisite burden. Absent arbitrary and capricious disregard of undisputed evidence or some extrinsic consideration such as bias, passion or prejudice on the part of the trial judge, the finding cannot be disturbed. An appellate court cannot nullify a trial judge's disbelief of evidence nor can it determine the persuasiveness of evidence which the trial judge may have believed. (Following *Fox v. Wilson*, 211 Kan. 563, 507 P. 2d 252, Syl. ¶ 8.)" (Syl. ¶ 2.)

Although there is evidence that Knudson made changes in the building plans during construction, was consulted about the con-

struction from time to time, had the men stop working and wait on occasion, and even helped with dirt work on rainy days, the great weight of the evidence amply supports the trial court's findings negating any agency relationship. The trial court's finding that Boyce was to furnish the labor and materials for both jobs is supported by the undisputed testimony of Knudson and the subsequent conduct of the parties. Boyce said he ordered and purchased the materials from the Highland Lumber Company. The fact that these tickets had "Knudson job" written on them is of no moment in establishing an agency since we take note that this is the method in which contractors would be expected to earmark tickets for their internal accounting purposes so they can later determine the cost and make a determination of the profit and loss on each individual job.

Although changes were made by Knudson, he testified that he inquired about the cost thereof. It is common knowledge changes are often made by owners during the construction period and that consequently contractors must raise the contract price to accommodate the changes desired.

It is clear the trial court did not believe plaintiff sustained its burden of proof on the agency question. Although the evidence is in conflict in several instances, there is ample competent evidence to support the court's findings. Findings of fact determined on conflicting evidence are conclusive. (*Kramer v. Farmers Elevator Co.*, 193 Kan. 438, 393 P. 2d 998.)

While what has been said disposes of the controlling issue in this appeal, we shall briefly mention other points raised by plaintiff. In its first two points, plaintiff challenges the trial court's first two findings on grounds that there was no reference in the record to the date "March 1971" appearing in finding No. 1, and that mention of "cement pits at both ends of the hog house" by the trial court in finding No. 2 came from a source not within the record. The same trial judge presided at the previous trial of *Boyce v. Knudson*, 219 Kan. 357, 548 P. 2d 712, in which Boyce testified that the preliminary agreement with Knudson was entered into in March 1971. There was also testimony in that trial concerning the precise subject matter of the contract alteration which pertained to the cement pits referred to by the court in finding No. 2. The trial court's recollection of the evidence at the former trial may well account for the references complained of by meticulous counsel in the present case. In any event, neither

the specific date of the oral agreement nor the precise subject matter of the contract alteration was contested in the instant case, because neither matter was a material fact crucial to the case of either party or to the court's determination of the controlling issue.

What has been said herein disposes of plaintiff's third contention that the evidence was too vague and inconclusive to support findings Nos. 1 and 2.

In point four, plaintiff argues that finding No. 5 indicates the trial court adopted a theory that plaintiff in filing its mechanic's lien had elected a remedy and thereby was foreclosed from pursuing its attempt to impose liability on defendant Knudson based on agency. We are unable to find any indication in the record inferring that the trial court relied on the suggested erroneous theory in rendering its judgment. Even if such were the case it is a well-established rule in this jurisdiction that if the trial court renders a correct judgment under the facts and law, the judgment will not be disturbed merely because wrong reasons are given for its rendition. (*Wallace v. Magie,* 214 Kan. 481, 522 P. 2d 989; and *City of Wichita v. Boles,* 156 Kan. 619, 135 P. 2d 542.)

We have carefully examined all of the points raised by plaintiff on appeal and we find no reason shown that justifies disturbing the findings and conclusions of the trial court.

The judgment is affirmed.